UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY NOVOA,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 14-cv-03617-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: ECF No. 22 |

Pending before the Court is Defendants City and County of San Francisco and Deborah Franks's Motion for Summary Judgment. ECF No. 22. For the reasons set forth below, the Court will grant the motion.

**I.   BACKGROUND**

    **A.   Parties, Claims, and Procedural History**

Plaintiff Gregory Novoa ("Plaintiff"), a former transit operator with the San Francisco Municipal Transit Agency ("MTA"), brings this action against Defendants City and County of San Francisco and Deborah Franks ("Defendants") for claims arising from his dismissal. Compl., ECF No. 1, Ex. A ¶ 3. Plaintiff alleges that Defendants violated his constitutional rights to equal protection and due process when they terminated his employment. Id. ¶ 18. Plaintiff first filed his complaint in San Francisco Superior Court on June 13, 2013. ECF No. 1 at 2. Defendants removed the action to federal court on August 11, 2014. Id. at 1. Plaintiff's complaint also named two other Defendants, the San Francisco Municipal Transportation Agency ("MTA") and Mike Helms, but Plaintiff subsequently dismissed them. ECF Nos. 6, 15.

The Court's scheduling order required that factual discovery be completed by May 18, 2015, and Defendants began to serve discovery requests on Plaintiff on April 17, 2015. ECF No. 21 at 2. However, Plaintiff did not respond to Defendants' requests. Id. The Court then granted

1    the parties' stipulated request to extend the motion to compel discovery deadline until thirty days

2    after the Court issued its order on the instant summary judgment motion.  ECF No. 21.

3    Defendants subsequently filed this motion for summary judgment on July 2, 2015.  ECF No. 22.

**B.     Undisputed Facts**

Plaintiff Gregory Novoa, a Hispanic man, worked for the MTA from 2007 until he was terminated in 2011.  ECF No. 23, Boris Reznikov Decl., Novoa Depo. at 73:14-23.  As part of his training, Plaintiff received a copy of the MTA rule book, governing conduct of MTA employees including Plaintiff, which Plaintiff reviewed.  Id. at 74:20-22, 75:14-24.

The precipitating event to Plaintiff's termination occurred on March 19, 2011.  ECF No. 30, Novoa Decl. ¶¶ 4-6.  While operating an out-of-service bus ("coach"), Plaintiff used the coach to retrieve an abandoned barbeque grill from the side of the road.  Id. ¶ 5; ECF No. 24, Iborra Decl., Ex. D.  Following the pick-up, Plaintiff proceeded to use his cell phone while driving the coach to call his brother, which resulted in Plaintiff operating the vehicle with one hand.  Novoa Depo. at 44:4-10; Iborra Decl., Ex. D.  During the phone call, Plaintiff was forced to use his breaks suddenly to avoid an accident occurring in front of him, in which a motorcyclist was thrown off of his bike and slid underneath the bus Plaintiff was operating.  Novoa Depo. at 39:20-40:14; Iborra Decl., Ex. D.  Plaintiff stated that he "should have honked his horn" before the accident, Novoa Depo. at 40:2, and also acknowledged that "distracted driving while using a cellular telephone is a safety hazard," Novoa Decl. ¶ 2.  When Plaintiff stopped the coach abruptly, the coach's DriveCam (the on board camera) was activated, capturing Defendant's cell phone usage.  Iborra Decl., Exs. C1, D.

On March 21, 2011, Plaintiff's supervisor, Defendant Deborah Franks, the Superintendent of Muni's Presidio Division, viewed both the DriveCam and the on board surveillance footage from March 19, 2011.  ECF No. 25, Franks Decl. ¶ 3.  In the surveillance footage, Defendant can be seen and heard using the wheelchair lift to retrieve and load the barbeque grill onto the coach, using his cell phone while driving one-handed, and speaking with someone on the phone.  Id.; Iborra Decl., Ex. D.  Defendant Franks then recommended that Plaintiff be dismissed from his position.  Franks Decl. ¶3.

Franks sent Plaintiff a Skelly notice on March 21, 2011, the same day she viewed the video footage.[1]  Iborra Decl., Ex. C1.  The notice detailed the charges against him,[2] provided the date for his Skelly hearing, noted that Plaintiff had a right to provide an oral or written response, and told Plaintiff that Franks would recommend that Plaintiff be terminated.  Id.; Novoa Depo. at 166:4-8.  The notice charged Plaintiff with violating several provisions of the official San Francisco Municipal Railway Rules and Instruction Handbook, including the prohibition against using buses for personal use and using headphones or cellular devices while operating a vehicle, as well as violating traffic laws and ordinances.  Iborra Decl., Ex. C1.

On March 28, 2011, Plaintiff and a union representative attended the Skelly meeting with Franks.  Id., Ex. C2; Novoa Depo. at 171:24-172:19.  Plaintiff was given the opportunity to speak, and he admitted that his conduct was improper.  Iborra Decl., Ex. C2.  Franks sustained her recommendation to terminate Plaintiff based on his violations of Muni policy.  Id.  Plaintiff was then dismissed.  Id.  Plaintiff received a letter summarizing the Skelly meeting and Defendant

---

[1] Under California law, a public employee is entitled to certain pre-termination safeguards.  Skelly v. State Pers. Bd., 15 Cal. 3d 194, 215 (1975) ("due process does mandate that the employee be accorded certain procedural rights before" removal).  At a minimum, these safeguards must include "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline."  Id.

[2] The Skelly notice sent to Plaintiff identified violations of the following MTA rules:

> 2.1.5 Violation of any rule in this Rules and Instructions Handbook is sufficient cause for disciplinary action up to and including dismissal.
>
> 2.2.1 Written instruction, rules, procedures, bulletins, notices and written and verbal orders apply to all employees whose duties they affect and must be obeyed.
>
> 2.7.4 Railway property must not be converted to personal use.
>
> 2.13.1 Violation of any of the following rules will be sufficient cause for charges for disciplinary action involving suspension or, if appropriate, dismissal.
>     A. Inattention to duties.
>
> 2.14.1 Employees must comply with the law, ordinance, and regulations of the state of California and the city and county of San Francisco.
>
> 2.22.7 Employees are not to display or play personal radios, use headphones, or cellular telephones at any time while operating a vehicle.

See Iborra Decl., Ex. C1.

3

Franks's decision and notifying him about the appeals process. Id.

Plaintiff filed an appeal to his dismissal pursuant to a Memorandum of Understanding ("MOU") that governed the conditions of his employment and specifically outlined grievance procedures. Id., Ex. C3. On April 13, 2011, a "Step 3" grievance hearing was held before MTA Hearing Officer Chris Iborra. Id. Plaintiff was again accompanied by a representative from his union. Id. Although Plaintiff requested that his dismissal be modified to a suspension, the MTA Hearing Officer denied his request. Id. Mr. Iborra concluded that Plaintiff's decision to use the bus to pick up and carry the barbeque pit, combined with his subsequent cell phone usage, constituted just cause for termination. Id.

Plaintiff appealed his dismissal to an independent arbitrator under the MOU grievance procedures. Id., Ex. C4. On May 31, 2011, at a "Step 4" arbitration hearing, Alexander Cohn reviewed the decision of the MTA Hearing Officer and heard from Plaintiff's union representative. Id. The arbitrator examined Plaintiff's previous reprimands for cell phone usage and noted that Plaintiff knew or should have known that the use of a cell phone while operating a bus could result in his termination. Id. Because the dismissal was "within the zone of reasonableness," the independent arbitrator upheld Plaintiff's termination. Id.

This decision was then reviewed by MTA's Executive Director/CEO, Nathaniel P. Ford Sr. Id., Ex. C5. After examining the facts and proceedings that pertained to Plaintiff's termination, Mr. Ford determined that Plaintiff's dismissal should be sustained. Id. Plaintiff was officially dismissed from his position on June 15, 2011. Id.

As Plaintiff concedes, this was not the first time he had been disciplined for violating the MTA's workplace rules. Novoa Decl. ¶ 6. In November 2008, Plaintiff received a written warning for driving the bus with an electronic earbud in his ear, a charge for which Plaintiff denies wrongdoing. Iborra Decl., Exs. E1, E2; E3, E4; Novoa Depo. at 116:1-9. Two passengers also filed complaints about Plaintiff's cell phone usage in September 2009 and February 2010, the latter of which earned him an oral warning from his former supervisor. Iborra Decl., Ex. F; Novoa Depo. at 147:4-10, 166:9-15. In October 2010, a MTA Transit Inspector again observed Plaintiff wearing his earbud and talking on the phone while operating his bus. Iborra Decl., Ex. G1.

Plaintiff was initially recommended for dismissal but ultimately given a fifteen-day suspension after an appeal process. Id., Exs. G1, G2, G3.

Although Plaintiff admitted that he has been previously been sanctioned for his cell phone use, he does not believe he should have been terminated for using a cell phone on an out-of-service bus. Novoa Decl. ¶ 2. He also believes that, pursuant to the MOU and "common knowledge among operators," any disciplinary action that was more than a year old could not be mentioned in a subsequent disciplinary proceeding. Id. ¶ 6. Plaintiff contends that his prior incidents were improperly considered by the arbitrator at his Step IV hearing. ECF No. 29 at 4. Plaintiff also argues that the appropriate punishment should be governed by bulletins that were released by SFMTA, which dictated that for a second offense, the appropriate punishment is no more than a five day suspension. Id. Plaintiff did not plead these factual allegations in his complaint. See ECF No. 1, Ex. A. He also does not address his personal use of an MTA vehicle, which was an additional basis of his termination.

### C.     Jurisdiction

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v.

1 Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). However, unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

For claims on which the defendant does not carry the ultimate burden of persuasion, defendant as the moving party, has the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing that the plaintiff cannot produce evidence sufficient to satisfy her burden of proof at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, then the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. Id. at 1102-1103. The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

While a court may not grant a defendant's motion on the basis that it is unopposed, the court may grant the motion if submissions are sufficient to support the motion and do not reveal a genuine issue of material fact. See Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993); see also Fed. R. Civ. P. 56 Advisory Committee's Note ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

## III. DISCUSSION

Defendants move for summary judgment as to each claim Plaintiff asserts against them. ECF No. 22 at 1. Defendants argue that summary judgment is appropriate because the undisputed facts demonstrate that Plaintiff was given adequate due process and was not discriminated against

1 in his termination proceedings.  Id. at 2.

2 Plaintiff opposes the motion to dismiss the due process claim on two grounds:  (1) that the Defendants improperly used Plaintiff's prior disciplinary actions, which had concluded more than twelve months before March 19, 2011, in the disciplinary hearings that resulted in Plaintiff's termination, and (2) that Defendants' Skelly notice was deficient, because at the time of Plaintiff's termination the appropriate disciplinary policy mandated that he be suspended for no more than five days.  ECF No. 29 at 4.  Plaintiff makes no argument in his opposition regarding his equal protection claim.  See id.

### A. Plaintiff's Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  To prevail on an equal protection claim brought under section 1983, a plaintiff "must show that the defendants, acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional."  Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134 (9th Cir. 2003).

Plaintiff's complaint alleges that he is a member of a protected class, and that Defendants fostered an official, *de facto* policy of "favoritism, racism, and nepotism."  ECF No. 1, Ex. A ¶ 13.  This *de facto* policy is rooted in "the deliberate indifference of high ranking municipal officials," who took no action to prevent Plaintiff's constitutional rights from being violated.  Id. ¶ 22.  But Plaintiff offers no evidence, and makes no argument, in his opposition to summary judgment in support of his equal protection claim.  See ECF No. 29.

Defendants do not dispute that Plaintiff, who identifies as Hispanic, is part of a protected class.  ECF No. 22 at 2.  However, Defendants deny that (1) that they acted with discriminatory intent and (2) that Plaintiff was subject to disparate treatment based on that classification.  ECF No. 22 at 9.  In support of their argument, Defendants have provided declarations from Plaintiff's supervisor, Defendant Franks, and MTA Hearing Officer Chris Iborra.  Defendant Franks declared

United States District Court
Northern District of California

that her decision to recommend Plaintiff for dismissal was based on the misconduct she reviewed on the surveillance video and DriveCam. Franks Decl. ¶ 3. She further stated that she did not consider Plaintiff's racial background, ethnicity, or national origin in making the decision. Id. Similarly, Mr. Iborra declared that he decided to uphold Plaintiff's discharge based on Plaintiff's acts in using the coach to carry the barbeque pit and using a cell phone while operating the coach. Iborra Decl. ¶ 7. He also stated that he did not consider Plaintiff's background in making his decision. Id. Defendants have offered evidence showing that Plaintiff was terminated because of his conduct on March 19, 2011.

Plaintiff has not provided any evidence that he was treated differently from others similarly situated based on his classification. In fact, at his deposition, Plaintiff himself stated that he did not actually believe that his termination "had anything to do with [his] Hispanic background." Novoa Depo. at 196:18-197:11. And although Plaintiff later stated that he felt that he was treated differently during the termination proceedings because he was Hispanic, Plaintiff did not identify any instance in which he was treated differently from his colleagues. Id. at 202:8-17. Instead, Plaintiff admitted that he did not have evidence that the City treated him any differently because of Hispanic background. Id. 202:4-7. In opposition to Defendants' motion for summary judgment, Plaintiff also did not advance any argument or support with respect to the equal protection claim. See ECF No. 29. Defendants have properly supported their motion for summary judgment, but Plaintiff has not provided "significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citing Anderson, 477 U.S. at 252). The Court concludes that because Plaintiff has not offered any evidence that creates a genuine issue of material fact on his equal protection claim, summary judgment in favor of Defendants is proper.

### B. Plaintiff's Due Process Claim

The Due Process Clause of the Fourteenth Amendment "protects individuals against the deprivation of liberty or property by the government without due process." Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). A plaintiff who has been deprived of due process under color of state authority may proceed under 42 U.S.C. § 1983. Collins v. City of Parker

Heights, Texas, 503 U.S. 115, 199-200 (1992). To establish a due process claim under section 1983, a plaintiff must show that a person acting under the color of state law deprived her of a right, privilege or immunity protected by the Constitution or federal law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). A "procedural due process claim hinges on proof of two elements: (1) a protectable liberty or property interest; and (2) a denial of adequate procedural protections." Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005).

The Court concludes that Defendants are entitled to summary judgment on Plaintiff's due process claim, for two reasons. First, Plaintiff did not plead such a claim in his complaint. He raises it for the first time in his opposition to summary judgment. Second, on the merits, he has not submitted any evidence from which a reasonable jury could find in his favor on the claim.

### 1. Factual Allegations in Plaintiff's Complaint

Plaintiff argues in his summary judgment opposition that the MTA denied him due process by considering prior disciplinary actions that were more than one year old as part of his termination hearing, and by sending a Skelly notice that was deficient because it warned of termination even though MTA's disciplinary policies prescribed a maximum punishment of suspension for no more than five days. ECF No. 29 at 4. Plaintiff, however, does not refer to these facts, or make a due process claim, in his complaint. See ECF No. 1, Ex. A. It is true that Plaintiff uses the phrase "due process" once in his complaint, but only in the midst of a boilerplate paragraph accusing Defendants of committing "said civil rights violations and or other acts of misconduct included intimidation, denial of due process and equal protection, retaliation, conspiracy to violate civil rights, and/or other misconduct." Id. ¶ 18.

The sole specific cause of action identified in the complaint is discrimination and violation of equal protection based on race. Id. ¶ 34. To support that claim, Plaintiff states:

> On June 13, 2011, Plaintiff was terminated after a result-oriented investigation and hearing/grievance process. Franks and Defendants took Novoa off the job, put Novoa on administrative leave, and started the disciplinary process against Novoa. There began a series of retaliatory and discriminatory actions aimed at Novoa. Novoa has been subject to unequal treatment in the job place. Novoa had been subjected to threats of termination before June 13, 2011. San Francisco refuses to take measures to protect persons such as Novoa. Plaintiff suffered injuries as a result.

9

1   Id. ¶¶ 26-32.  None of these statements provide factual information that would indicate that the
2   hearing/grievance procedures did not provide Plaintiff with sufficient "oral and written notice of
3   the charges against him, an explanation of the employer's evidence, and an opportunity to present
4   his side of the story."  Loudermill, 470 U.S. at 546.  In short, Plaintiff's complaint advances only
5   an equal protection theory and does not make a due process claim.  See also ECF No. 1, Ex. A ¶¶
6   33-35.

Plaintiff may not use summary judgment to proffer allegations that were not adequately made in the complaint.  Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); see also Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation and internal quotation marks omitted).  Here, Plaintiff failed to include any factual allegations related to Defendant's violation of his due process right and did not identify it as a cause of action in the complaint.  See ECF No. 1, Ex. A.  Plaintiff also did not seek leave to amend his complaint to include such allegations.  For that reason alone, Defendants are entitled to summary judgment on Plaintiff's due process claim.  See Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006) (upholding the district court's decision to not hear a plaintiff's newly asserted ADA violations at the summary judgment stage because it would violate the fair notice requirement of Federal Rule of Civil Procedure 8).

### 2. Adequacy of Process

Even if the Court were to consider Plaintiff's due process claim, the Court would still grant summary judgment in favor of Defendants, because Plaintiff has not provided evidence that would allow a reasonable jury to find in his favor.

When a public employee is terminated for cause, the employee must be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an

opportunity to present his side of the story." Loudermill, 470 U.S. at 546.[3]  "A predeprivation hearing serves only as 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges are true and support the proposed action.'" Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 985 (9th Cir.1998) (quoting Loudermill, 470 U.S. at 545-46). "[T]he root of this requirement is that an individual have the opportunity to be heard before he is deprived of his property interest." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 968 (9th Cir. 2011).

Here, Plaintiff was given a Skelly notice that clearly explained the charges against him and the evidence supporting the recommendation that he be terminated.[4] See Iborra Decl., Ex. C1. Following this notice and prior to his dismissal, Plaintiff was given an opportunity to present his side of the story at the Skelly hearing. Id., Ex. C2. This pre-deprivation procedure was an adequate "initial check against mistaken decisions." Loudermill, 470 U.S. at 545. After Plaintiff's Skelly hearing, Plaintiff was provided with two additional opportunities to appeal the dismissal decision – one with an MTA Hearing Officer and another with an independent arbitrator – prior to his termination. See Iborra Decl., Ex. C3, C4.

The evidence demonstrates that "Defendants provided, and Plaintiff fully utilized, procedures ensuring pre-deprivation due process." Flugence v. City & Cnty. of San Francisco, No. C 12-00437 MEJ, 2013 WL 6235372, at *8 (N.D. Cal. Dec. 2, 2013), appeal dismissed (Sept. 23, 2014) (finding that the procedural safeguards given to a terminated SFMTA employee prior to Step 4 provided sufficient procedural due process). See also Robinson v. City and Cnty. of San

---

[3] Defendants do not contest that Plaintiff has a legitimate property interest in the continuance of his public employment. ECF No. 22 at 11-12; see Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538-39 (1985). Therefore, the Court focuses only on the second element of a due process claim – whether Plaintiff was denied adequate procedural protections.

[4] Plaintiff argues that this notice was deficient, because based on the Bulletins issued by MTA, he did not think his use of a cell phone could result in termination. See Novoa Decl. ¶ 2. However, this argument misses the mark. The notice itself was sufficient because it alerted him to the proposed termination and the reasons supporting the action. Plaintiff's argument is also inconsistent with his deposition testimony: Plaintiff admitted that based on the rulebook and prior Skelly notices, he was aware that use of a cell phone while operating a coach could lead to termination. Novoa Depo. at 170:24-171:4. Plaintiff further acknowledged that he understood that his personal use of railway property was another violation that Defendant Franks considered in sustaining her recommendation for dismissal. See id. at 173:15-24.

1   Francisco, No. 13-cv-05832-JSC, 2015 WL 4881158, at *5 (N.D. Cal. Aug. 14, 2015) (concluding

2   that the MTA operator, who had three pre-termination hearings, had "more than adequate

3   opportunity" to be meaningfully heard); Lopez v. City and Cnty. of San Francisco, No. 12-cv-

4   06523-MEJ, 2014 WL 2943417, at *8 (N.D. Cal. June 30, 2014) (concluding that the same

5   process challenged here provided plaintiff "with more than an adequate opportunity to be heard at

6   a meaningful time and in a meaningful manner").  Defendants therefore satisfied their due process

7   obligations to Plaintiff.

8   Because Defendants have demonstrated that there is no material dispute as to the adequacy

9   of the procedural due process afforded to Plaintiff, the Court must grant Defendants' motion for

10  summary judgment on this ground also.

### C. **Monell** Liability

Under 42 U.S.C. section 1983, municipalities are considered "persons" who can be subject to liability when their official policies or customs cause a constitutional tort.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  "Under Monell, municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a 'final policymaker.'" Ellins v. City of Sierra Madre, 710 F.3d 1049, 1066 (9th Cir. 2013).  A city cannot be held liable through respondeat superior; rather, the municipality itself must have caused the constitutional violation.  Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).

Because Defendants are entitled to summary judgment on Plaintiff's substantive claims, there is no constitutional injury and no basis on which the Court could impose Monell liability. See Aguilera v. Baca, 510 F.3d 1161, 1174 (9th Cir. 2007) ("Since no violation of any constitutional right occurred, we need not reach the claim against the County under Monell . . . .").

///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted. All pending deadlines and hearings in this action are vacated. Defendants shall submit a proposed form of judgment within seven days of the date of this order.

IT IS SO ORDERED.

Dated: September 3, 2015

_____
JON S. TIGAR
United States District Judge